IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEACE CHURCH RISK RETENTION | : | |
| GROUP, (A RECIPROCAL), AS SUBROGEE | : | |
| OF BARCLAY FRIENDS, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-5377 |
| JOHNSON CONTROLS FIRE PROTECTION LP, | : | |
| f/k/a SIMPLEX GRINNELL LP | : | |

**<u>MEMORANDUM</u>**

**SURRICK, J.**                                                          **MARCH 31, 2021**

In this subrogation action, Plaintiffs Peace Church Risk Retention Group and Caring Communities are liability insurers who made settlement payments on behalf of their insured, Barclay Friends Senior Living Community. The payments were made in conjunction with settling state court wrongful death lawsuits that arose after a fire at Barclay Friends took the lives of four residents. Defendant Johnson Controls Fire Protection, LP was responsible for monitoring and servicing the sprinkler system at Barclay Friends. Plaintiffs allege that it was Johnson Control's negligence that caused the fire and untimely deaths of Barclay Friends' residents. Under the doctrine of equitable subrogation, Plaintiffs assert claims against Johnson Controls on behalf of Barclay Friends, its insured, for negligence, negligent misrepresentation, fraud, and breach of implied warranty of workmanlike services. Johnson Controls now moves to dismiss the Complaint. (ECF No. 20.) Johnson Controls argues that the Plaintiff Insurers are unable to assert cognizable tort claims against an alleged third-party tortfeasor. For the reasons that follow, Johnson Controls' Motion will be denied.

I.    **BACKGROUND**[1]

Plaintiffs are liability insurers.  Peace Church is a risk retention group and Caring Communities is a reciprocal risk retention group.  (Compl. ¶ 1-2.)  Plaintiffs insured Barclay Friends, the owner and operator of an assisted living, personal care, and skilled nursing facility located in West Chester, Pennsylvania.  (*Id.* ¶ 9.)  Peace Church provided primary liability insurance coverage while Caring Communities provided excess liability insurance coverage.  (*Id.* ¶¶ 50-51.)

Defendant Johnson Controls provided Barclay Friends with fire protection systems monitoring services.  (*Id.* ¶¶ 13-14.)[2]  The monitoring of the fire protection systems required Defendant to inspect, test, and detect whether control valves used in the sprinkler system were in the proper positions to ensure the supply of water through the system in the event of a fire.  (*Id.* ¶ 22.)  In May of 2017, in performing necessary repairs on one defective control valve, Defendant closed several control valves.  (*Id.* ¶¶ 24-26.)  After the repair was complete, Defendant failed to return all the valves to their fully open positions, which prevented water supply from flowing through the sprinkler system to the Woolman Building.  The Woolman Building was used as a residential personal care facility for the elderly.  (*Id.* ¶¶ 10, 27.)  In June and August of 2017, when Defendant performed testing, inspection, and maintenance on the fire alarm and sprinkler systems at Barclay Friends, Defendant again failed to notice that certain control valves were not positioned to function properly.  (*Id.* ¶¶ 33, 34.)

---

[1] When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiffs' complaint and construe the facts alleged in the light most favorable to the plaintiffs.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

On November 16, 2017, a fire began in the Woolman Building at Barclay Friends.  (*Id.* ¶ 43.)  However, due to the closed valves, the sprinkler system could not fully function.  (*Id.* ¶¶ 46-48.)  The fire resulted in the deaths of four residents.  (*Id.* ¶ 49.)

The estates of the four deceased residents brought wrongful death claims against Barclay Friends, Johnson Controls, and other defendants in the Court of Common Pleas of Philadelphia County.  (*Id.* ¶ 52.)  Plaintiffs, as Barclay Friends' insurers, settled those claims with confidential payments in an amount in excess of $150,000.  (*Id.* ¶ 53.)  Johnson Controls also settled the wrongful death claims asserted against it.

In this action, Plaintiffs seek to recover the amounts that they paid to the decedents' estates to settle the wrongful death claims brought against Barclay Friends.  Under the theory of equitable subrogation, Plaintiffs assert claims against Johnson Controls for:  negligence, gross negligence, and wanton and willful misconduct (Count I); negligent misrepresentation (Count II); intentional misrepresentation and fraud (Count III); and breach of implied warranty of workmanlike services (Count IV).  Johnson Controls moves to dismiss the Complaint in its entirety, contending that Plaintiffs have no cognizable claims against Johnson Controls.  (Def.'s Mot., ECF No. 20.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the

---

[2] Johnson Controls was formerly known as Simplex Grinnell.  In 2016, the companies merged.  We refer to Defendant as Johnson Controls.

sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler*, 578 F.3d at 211. Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In deciding a motion to dismiss under Rule 12(b)(6), all material allegations pleaded and all reasonable inferences that can be drawn from them must be accepted as true and construed in a light most favorable to the non-moving party. *Markowitz v. Northeast Land Co*., 906 F.2d 100, 103 (3d Cir. 1990).

## III.    DISCUSSION

Plaintiffs' claims against Johnson Controls—negligence, negligent misrepresentation, fraud, and breach of implied warranty of workmanlike services—are brought under the doctrine of equitable subrogation. Equitable subrogation is often used by insurance companies to recoup payments that they made to their insureds for the loss or damages caused by third parties. Through subrogation, an insurer is permitted "to stand in the shoes of the claimant and assert the

claimant's rights against the tortfeasor." *Kiker v. Pennsylvania Fin. Resp. Assigned Claims Plan*, 742 A.2d 1082, 1086 (Pa. Super. Ct. 1999) (citation omitted); *Erie Ins. Exch. v. Celina Mut. Ins. Co*., No. 90-6831, 1991 WL 146953, at *5 (E.D. Pa. July 24, 1991) ("The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation."). The insurer, as subrogee, however, can only recover when the subrogor, the insured, "has a legally cognizable cause of action against a third party." *Kiker*, 742 A.2d at 1086. The insurer's right to subrogation is "exclusively derivative—it depends on the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured." *Banks Tower Communications, Ltd. v. Home Ins. Co*., 590 F. Supp. 1038, 1040 (E.D. Pa. 1984); *see also Universal Underwriters v. Kacin*, 916 A. 2d 686, 693 (Pa. Super. Ct. 2007) (nothing that "an insurer's right to subrogation is limited to the rights of the insured" and "there can be no subrogation where an insured has no cause of action against a defendant").

Johnson Controls does not dispute that Plaintiffs are entitled to assert claims through equitable subrogation. (*See* Def.'s Reply 1, ECF No. 22-1 ("[Johnson Controls] does not disagree that Plaintiffs stand in the shoes of their insureds under the principle of equitable subrogation.").) Rather, Johnson Controls contends that because Barclay Friends has no cognizable claims against Johnson Controls, Plaintiffs, as the subrogees to Barclay Friends' claims, likewise have no claims against Johnson Controls. Johnson Controls asserts that the claims against it fail because Plaintiffs are unable to show a requisite element for its tort claims—proximate causation. In other words, Johnsons Controls claims that its alleged negligent conduct did not proximately cause Barclay Friends to settle the wrongful death lawsuits. According to Johnson Controls, Plaintiff Insurers could only assert contribution and

indemnity claims against an alleged third-party tortfeasor through subrogation, but that those claims also fail.  Johnson Controls' argument is flawed for several reasons.

First, nothing prohibits insurers from asserting tort-based claims against third party tortfeasors through equitable subrogation.  In equitable subrogation cases, district courts more often see claims for contribution and indemnity asserted by insurance companies.  However, that does not preclude an insurer from asserting other causes of action.  Johnson Controls has failed to cite any case—and indeed, we are unable to find one—that stands for the proposition that an insurance company is limited to claims of contribution and indemnity in the context of equitable subrogation.  In fact, in a related case, Barclay Friends' property insurer brought tort-based claims against Johnson Controls for payments that it made to Barclay friends as a result of property damage caused by the fire.  *See Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP*, No. 18-5379, 2019 WL 4014405, at *6-7 (E.D. Pa. Aug. 23, 2019) (denying motion to dismiss complaint).  In that case, identical claims were asserted against Johnson Controls:  negligence, negligent misrepresentation, fraud, and breach of implied warranty.  *Id.* at *2.  Although the case ultimately settled, neither Johnson Controls nor any other party disputed that the insurer was permitted to assert tort-based claims against Johnson Controls in an attempt to recover payments it made on behalf of its insured, Barclay Friends.  *See id*; *see also Royal Indem. Co. v. Sec. Guards, Inc*., 255 F. Supp. 2d 497, 500 (E.D. Pa. 2003) (addressing negligence claims asserted by insurer against third party tortfeasor in subrogation action).

Second, Johnson Control's theory that proximate causation is lacking is not supported by case law.  Generally, insurers are not permitted to assert *direct* claims against a third-party tortfeasor.  *See Am. Ins. Co. v. United States*, 575 F.2d 1031, 1033 (2d Cir. 1978).  Insurers cannot recover *directly* from the tortfeasors because the injury or loss "is too remote and not

6

proximately caused by the tortfeasor's acts." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 327 (D.N.J. 2013).  However, Plaintiffs in this case are not asserting *direct* claims against Johnson Controls.  Rather, they assert subrogated claims.  Through subrogation, Plaintiffs step into the shoes of their insured, Barclay Friends, to assert whatever claims Barclay Friends may have against Johnson Controls.  Under these circumstances, remoteness of injury to the alleged negligence is no longer a concern.  *New Jersey Carpenters Health Fund v. Phillip Morris, Inc.*, 17 F. Supp. 2d 324, 330-31 (D.N.J. 1998) ("A subrogated insurer's right of recovery against a third-party tortfeasor is not inconsistent with what is essentially the rule that an insurer's loss is too remote and not proximately caused by the tortfeasor's acts because the subrogee (the insurer) 'steps into the shoes' of the subrogor (the insured).").  Plaintiffs are subject to all the defenses that Johnson Controls has against the insured, Barclay Friends.  *Am. Fire & Cas. Co. v. Material Handling Supply, Inc.*, No. 06-1545, 2007 WL 1296200, at *2 (D.N.J. Apr. 27, 2007) ("Therefore, a subrogee's rights can rise no higher than those of its subrogor.").

The allegations of the Complaint support a claim that Johnson Controls acted negligently in repairing and monitoring the sprinkler system at Barclay Friends.  The allegations also support a finding that Johnson Control's alleged negligent conduct was a substantial factor in bringing about the harm to Plaintiffs, on behalf of Barclay Friends—liability for the wrongful death actions.  *See Chetty Holdings Inc. v. NorthMarq Cap., LLC*, 556 F. App'x 118, 121-22 (3d Cir. 2014) (explaining that under Pennsylvania law, negligent conduct is the proximate cause of harm if the conduct is a substantial factor in bringing about the harm).  Simply because Plaintiffs, on behalf of Barclay Friends, ultimately settled with the estates of the wrongful death victims does not render proximate cause too remote or speculative.  *See Liberty Mut. Fire Ins.*

7

*Co. v. Wal-Mart Stores E., LP*, <u>269 F. Supp. 3d 1254, 1263</u> (M.D. Fla. 2017) (explaining that "an insurer may have subrogation rights declared after it has paid a judgment or settlement on behalf of its insured").

Whether proximate causation supports Plaintiffs' claims is an inquiry more appropriate for the jury. *See Simmons v. Simpson House*, Inc., <u>224 F. Supp. 3d 406, 419</u> (E.D. Pa. 2016) (noting on motion to dismiss that "proximate cause inquiry … is inherently fact based and generally left to the jury"). At this juncture, we are not persuaded that proximate cause is lacking.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied.

An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

8